Robert K. Meyer, OSB #086470
888 SW Fifth Avenue, Suite 650
Portland, OR 97204
Phone: 503/ 459-4010
Fax: 503/ 274-1214
Email: robert@robertmeyerlaw.com

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| DEREK ZACARIAS,<br><br>            Plaintiff,<br><br>  v.<br><br>SOUTH COAST LUMBER CO.,<br><br>            Defendant. | Case No.<br><br>COMPLAINT<br><br>Unlawful Employment Practices in violation of TITLE I OF THE ADA (42 U.S.C. §12111, *et. seq.*); ORS 659A.112; ORS 659A.109; ORS 659A.118; ORS 659A.040; FMLA (29 U.S.C. § 2601 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

**Nature of the Action**

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages and attorney's fees for himself to redress injuries done to him by Defendant or officers, employees or agents of Defendant in contravention of his rights under Title I of the Americans with Disabilities Act, 42 U.S.C. §12111, *et. seq.* (hereafter "ADA"), Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (hereafter "FMLA"), and his state protected rights under Oregon Revised Statutes 659A.040, 659A.112, 659A.109, and 659A.118.

**Jurisdictional Allegations**

2.

This Court has jurisdiction over Plaintiff's federal claims under 29 U.S.C. § 2601 *et*

**1 | Complaint**

*seq.* pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §2000e-5(f)(3) as incorporated into the ADA by 42 U.S.C. §12117(a). This Court also has supplemental jurisdiction over Plaintiff's state claims pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

3.

Venue is proper within the District of Oregon, Medford Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all of Plaintiff's claims arose in this judicial district.

4.

Plaintiff filed timely claims with Oregon's Bureau of Labor and Industries ("BOLI") and the Equal Employment Opportunity Commission ("EEOC") raising the issues alleged herein. Plaintiff has closed the administrative matter and been issued a notice of right to sue from BOLI and has timely filed this matter within the time limits set forth in the notice of right to sue. Plaintiff has therefore exhausted administrative procedures.

**General Factual Allegations**

5.

Plaintiff is an Oregon resident.

6.

At all material times, Plaintiff was employed by Defendant in Oregon performing work in the Medford Division of Oregon District Court. Defendant maintains an Oregon office in Brookings, Oregon, in the Medford Division of Oregon District Court.

7.

At all material times, Defendant was Plaintiff's employer, Plaintiff was supervised by Defendant's employees or agents, and Plaintiff relied on the actual or apparent authority of Defendant's employees, supervisors and management, including Bruce Kohler, Tim Beckley, and Mike Beckley.

8.

Defendant was at all material times a company with 50 or more employees in Oregon

within a 75-mile radius.

9.

Defendant hired Plaintiff on March 26, 2006.  Plaintiff worked as a lumber grader.  As a grader, Plaintiff's job duties required grading wood, flipping boards, and other lumber tasks.  Plaintiff reported directly to foreman Bruce Kohler.  During Plaintiff's employment, Kohler demonstrated a disregard for Plaintiff's employment rights.  Kohler mocked Plaintiff for taking family medical leave to take care of his son who had a serious health condition in or about 2013, and Plaintiff reported to management about Kohler's treatment of Plaintiff multiple times.  Kohler was eventually disciplined by his managers for making fun of Plaintiff over the radio for his use of family medical leave.

10.

On or about May 13, 2015, Plaintiff injured himself at work when a board slid into his path, causing him to slip and catch his foot in the grated floor.  Both of his knees were injured in the fall, but his right knee absorbed most of the impact. Plaintiff saw his doctor the same day and he was placed on light duty. He filed a workers' compensation claim for his right knee and it was later accepted.  Plaintiff was also prescribed pain medications for his injury that caused drowsiness.  Plaintiff was also put on light duty on this day by his doctor, with work restrictions including no bending, squatting, crawling, walking ramps, using stairs or steps, using ladders, or walking on rough ground.

11.

At all material times, Plaintiff was a qualified person with a disability due to his on-the-job knee injuries that substantially limit one or more major life activities, including but not limited to caring for oneself, performing manual tasks, sleeping, and working.  Additionally, Plaintiff's on-the job injury was a serious health condition that qualified for protected medical leave under FMLA.

12.

On or about May 14, 2015, Plaintiff returned to work and provided foreman Kohler with his doctor's note limiting him to light duty and informed Kohler about his prescription

medication for pain that causes drowsiness.

13.

Kohler reviewed Plaintiff's medical documents upon receipt, but did not follow Plaintiff's work restrictions and assigned Plaintiff grading work. This task required standing the entire day and under Plaintiff's light duty restrictions, he was not to do a significant amount of walking or standing.

14.

After completing his shift that day, Plaintiff informed Director Tim Beckley of his doctor's work limitations and medication that caused drowsiness to treat his on-the-job injury and provided Beckley medical documentation about the same.  Plaintiff informed Beckley that Kohler had assigned Plaintiff to grading, despite his injury and work restrictions. Beckley told Plaintiff he would email Kohler to see if there was a modified job for Plaintiff.

15.

On or about May 15, 2015, Plaintiff asked Kohler if he reviewed Beckley's email and had a new job assignment for Plaintiff in compliance with his light duty. Kohler said he hadn't reviewed it and again assigned Plaintiff to grading. When Plaintiff tried to explain to Kohler that his restrictions prohibited him from standing all day, Kohler told Plaintiff to sit if he had to. Plaintiff did as he was told and worked the grading assignment.  Plaintiff was subsequently prescribed other pain medication and informed Beckley about the pain medication and the possible side effects.

16.

On or about May 19, 2015, Plaintiff's provider changed some of his work restrictions from "not ok" to "occasional."  However, on or about May 20, 2015, Plaintiff had to sit down while working due to intense knee pain. When Kohler saw Plaintiff sitting, he told Plaintiff to stand.  Plaintiff again explained that standing all day aggravated his knee injury. Kohler told Plaintiff to sit in the chipper room for the remainder of his shift.  Plaintiff was seen by his medical provider on this day who instructed that Plaintiff limit his standing due to his knee

injury.

17.

The next day, Plaintiff was assigned to grading again by Kohler even though Kohler knew such work violated Plaintiff's work restrictions from his doctor. Additionally, Plaintiff's left knee, which was partially injured in the fall, was aggravated by working outside of his restrictions.

18.

On or about June 2, 2015, Plaintiff had a medical appointment to treat pain from on-the-job injuries to both knees. On or about June 4, 2015, Plaintiff had an MRI and was diagnosed with a tibial plateau fracture of the right knee. Upon providing his new diagnosis to Defendant, Plaintiff was told to use a folding stool-like chair that was not effective in alleviating his knee pain during work. Plaintiff had to place weight on his knees in order to keep the chair stable while he worked, continuing to violate his work restrictions.

19.

On or about June 17, 2015, Plaintiff's right knee pain had worsened due to working outside of his restrictions. His left knee was also causing him increasing pain. He was in so much pain that he had to keep sitting down to relieve his knees. Kohler saw Plaintiff sitting and instructed him to stand. Plaintiff explained that he was still experiencing pain from his work injury and he informed Kohler he needed to see his doctor again. Kohler told Plaintiff he could go see the doctor.

20.

On or about June 17, 2015, Plaintiff was seen in urgent care for increasing left knee pain and right knee fracture from his on-the-job injury. He was given crutches and instructed not to place any weight on his left knee. Another MRI was scheduled.

21.

After his follow-up appointment, Plaintiff provided his medical documents to Beckley and informed Beckley that Kohler had still been assigning Plaintiff to tasks outside of his light

duty restrictions. Beckley again told Plaintiff he would email Kohler to see if other modified assignments were available. Beckley failed to offer medical leave or engage in any interactive process.

22.

The following day, Plaintiff provided his medical documents to Kohler. Kohler was upset after reading Plaintiff's updated restrictions and told Plaintiff to drag his chair to the grader station to sit all day and grade. Plaintiff again informed Kohler that grading was outside of his restrictions because he would have to climb stairs to get to the station. Kohler instructed Plaintiff to sit in the chipper room for the day.

23.

Plaintiff was assigned to sit in the chipper room for the following week until he was reassigned to the stacker. In order to operate the stacker, Plaintiff was required to climb stairs multiple times a day, against his work restrictions.

24.

On or about July 5, 2015, Kohler saw Plaintiff holding his cell phone and told Plaintiff make sure you leave your phone in the lunchroom. Kohler did not issue Plaintiff any formal discipline. Plaintiff was using the phone as a clock to track his time for breaks as other employees had done.

25.

On or about July 6, 2015, the grading crew was short-handed. Kohler again assigned Plaintiff to grading knowing Plaintiff could not do grading. When Plaintiff reminded Kohler that grading was against his work restrictions, Kohler was visibly upset and stormed out of the lunchroom. Kohler later complained to another worker that Plaintiff would not work outside his work restrictions.

26.

On or about the following day, Kohler approached Plaintiff and gave him a write-up for the phone incident that had occurred on an earlier day, for which Kohler previously had not written him up. Kohler was visibly upset. Kohler informed Plaintiff that he had decided

to issue Plaintiff a formal write-up for the earlier cell phone use after all. Plaintiff informed Kohler he had been using the phone as a clock so he could track his breaks and explained that it took him a long time to get to the lunchroom and bathroom for his breaks because of his injury to his knees and having to use crutches. Kohler went ahead and issued the written discipline.

27.

On or about July 9, 2015, Plaintiff fell asleep at work due to the pain medication he was taking. Plaintiff's doctor had cleared him for light duty work. Plaintiff had also notified Defendant about the medication he was taking and its potential side-effects prior to the incident.

28.

On or about July 11, 2015, Defendant treated Plaintiff as a no-call no-show. Apparently, Plaintiff had been scheduled by Kohler to work on a Saturday outside of the normal scheduled work week Kohler had assigned Plaintiff while injured. Kohler had apparently scheduled Plaintiff for a Saturday because he had taken time off for a medical appointment earlier in the week. The work assignment on Saturday was at the saw mill, which was outside Plaintiff's work restrictions due to the stairs he would have had to climb to work there. Plaintiff was later surprised to learn he was being treated as a no-call no show for a job assignment outside his work restrictions on day he typically did not work.

29.

On or about July 13, 2015, Plaintiff met with Defendant's senior management team, Mike Beckley and Tim Beckley. Mike and Tim Beckley confronted Plaintiff about sleeping on the job and told him it was serious enough to terminate him. Plaintiff admitted to falling asleep. Plaintiff explained to them that he believed he had fallen asleep due to the medication he had been taking for his on-the-job injury and that he had experienced difficulty sleeping due to the pain from his injury. Instead of engaging in a reasonable interactive process to determine an appropriate light duty position, or offering a medical leave of absence to allow Plaintiff to recover, Defendant terminated Plaintiff's employment on July 14, 2014.

### First Claim For Relief

### ORS 659A.040 – Workers' Compensation Discrimination/Retaliation

30.

Plaintiff realleges paragraphs 1 through 29.

31.

Plaintiff engaged in various protected activity under ORS 659A.040, including reporting an on-the-job injury to Defendant, obtaining treatment for an on-the-job injury, and filing a workers' compensation claim.

32.

Defendant's termination of Plaintiff was substantially motivated by Plaintiff invoking workers' compensation rights and constitutes injured worker discrimination/retaliation in violation of ORS 659A.040.

33.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

34.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

35.

Defendant's unlawful termination of Plaintiff was done with malice and/or with a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others. Therefore, Defendant should be assessed punitive damages pursuant in an amount to be determined at trial.

36.

Plaintiff is entitled to recover his costs and attorneys' fees pursuant to ORS 659A.885 and ORS 20.107.

37.

Plaintiff also seeks injunctive relief to prohibiting Defendant from discriminating or retaliating against employees due to an on-the-job injury or disability and/or for invoking the workers' compensation system or seeking reasonable disability accommodation.

## Second Claim For Relief

## ADA – Disability/Perceived Disability Discrimination

38.

Plaintiff realleges paragraphs 1 through 37.

39.

As set forth above, at all material times, Plaintiff had a disability covered by the ADA. Despite his disability, Plaintiff could perform the essential functions of the position with or without accommodation.

40.

As set forth above, Defendant knew about Plaintiff's disability at all relevant times.

41.

Alternatively, as set forth above, Defendant perceived Plaintiff to be disabled and/or Plaintiff had a record of such disability.

42.

Defendant's termination of Plaintiff was substantially motivated by his disability/perceived disability and constitutes unlawful disability discrimination in violation of the ADA.

43.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

44.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

45.

Plaintiff is entitled to recover his costs and attorneys' fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k) as incorporated into the ADA by 42 U.S.C. §12117(a).

46.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages pursuant to 42 USC §1981(b)(1) in an amount to be determined at trial.

### Third Claim For Relief

### ORS 659A.112 – Disability/Perceived Disability Discrimination

47.

Plaintiff realleges paragraphs 1 through 46.

48.

During his employment, Plaintiff was a qualified person with a disability as defined by ORS 659A.104. Despite his disability, Plaintiff could perform the essential functions of the position with or without accommodation.

49.

Defendant knew about Plaintiff's disability at all material times.

50.

Alternatively, Defendant perceived Plaintiff to be disabled and/or Plaintiff had a record of such disability.

51.

Defendant took adverse employment actions against Plaintiff in violation of his state-protected rights, including by terminating, failing to reinstate and/or assign Plaintiff further work.

52.

Defendant's termination of Plaintiff was substantially motivated by his disability/perceived disability and constitutes unlawful disability discrimination in violation of ORS 659A.112.  Furthermore, Defendant failed to engage in the interactive process and failed to offer reasonable accommodation in violation of 659A.112.

53.

Plaintiff re-alleges his damages, injunctive relief, costs, and attorneys' fees as stated in the paragraphs above.

### Fourth Claim For Relief
### ORS 659A.109 – Disability/Perceived Disability Retaliation

54.

Plaintiff realleges paragraphs 1 through 53.

55.

Plaintiff engaged in protected activity under 659A.109, including but not limited to requesting a reasonable accommodation of his medical condition.

56.

Defendant retaliated against Plaintiff in violation of 659A.109.  Defendant took adverse employment actions against Plaintiff in violation of his state-protected rights, including by terminating, failing to reinstate and/or assign Plaintiff further work.

57.

Plaintiff re-alleges his damages, injunctive relief, costs, and attorneys' fees as stated in the paragraphs above.

### Fifth Claim For Relief
### ORS 659A.112 and 659A.118 – Failure to Accommodate

58.

Plaintiff realleges paragraphs 1 through 57.

59.

Defendant engaged in an unlawful employment practice by failing to engage in the interactive process and/or failing to make reasonable accommodation for Plaintiff's disability

in violation of ORS 659A.112 and ORS 659A.118, resulting in Plaintiff losing income and suffering emotional distress.

60.

Plaintiff re-alleges his damages, injunctive relief, costs, and attorneys' fees as stated in the paragraphs 21-25.

## Sixth Claim For Relief
## Whistleblower Retaliation – ORS 659A.199

61.

Plaintiff realleges paragraphs 1 through 60 above as fully set forth herein.

62.

Defendant retaliated against Plaintiff in the terms and conditions of his employment by terminating Plaintiff in substantial part for opposing and/or reporting in good faith what Plaintiff believed to be legal violations related to unsafe working conditions, as well as evidence of violations of federal and/or state laws, rules, or regulations, including, but not limited to ORS 654.010, ORS 654.022, ORS 654.062, OAR 839-004-0001 et seq, and relevant provisions and regulations.

63.

Plaintiff re-alleges his damages, injunctive relief, costs, and attorneys' fees as stated in the paragraphs above.

## Seventh Claim For Relief
## FMLA Leave Denial/Interference/Retaliation

64.

Plaintiff realleges paragraphs 1 through 63.

65.

At all material times, Plaintiff had been employed by Defendant for 12 months and had performed at least 1,250 hours of service for Defendant during the preceding 12-month period.

66.

At all material times, Plaintiff suffered from a serious health condition. Additionally, Plaintiff had previously invoked FMLA and utilized FMLA leave to take care of his child who had a serious health condition.

67.

Plaintiff utilized leave that was protected leave under FMLA.

68.

As set forth above, Defendant denied, interfered with, discriminated and/or retaliated against Plaintiff for utilizing and/or attempting to utilize protected medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, interfering with Plaintiff's right to take medical leave, failing to reinstate Plaintiff when she was cleared to return to work, and terminating Plaintiff in retaliation for inquiring about/ taking protected medical leave.

69.

In perpetrating the above actions, Defendant violated 29 U.S.C. § 2601 *et seq.* causing Plaintiff to suffer damages.

70.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

71.

In perpetrating the above actions, Defendant acted willfully and/or with knowledge that its actions were in violation of FMLA or with reckless disregard of whether it was violating FMLA. As such, Plaintiff is entitled to liquidated damages for Defendant's violation of his FMLA rights in an amount equal to the sum of Plaintiff's lost wages and benefits, plus prejudgment interest thereon pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

72.

Plaintiff is entitled to recover his costs and attorney's fees pursuant to 29 U.S.C. § 2617(a)(3).

//

## Eighth Claim For Relief

## Wrongful Discharge in Violation of Public Policy

73.

Plaintiff realleges paragraphs 1 through 72.

74.

At all materials times, the public policy of Oregon prohibited an employer from retaliating against an employee for inquiring about and/or invoking her rights and/or utilizing and/or attempting to utilize the protected medical leave. This public policy is embodied in the common law, statutes, and regulations of the State of Oregon and the United States protecting the public and employees including, but not limited to: ORS 659A.183; OAR 839-009-0200 *et seq.*; 29 U.S.C. §2601, *et seq.*; and *Yeager v. Providence Health System Oregon*, 195 Or App 134 (2004).

75.

Defendant, through its agents and/or employees, violated the above public policies by denying, failing to provide, interfering with, discriminating and retaliating against Plaintiff for inquiring about and/or invoking his rights and/or utilizing and/or attempting to utilize protected medical leave. The discharge was unlawful and in violation of the public policy of the State of Oregon.

76.

Defendant's discharge of Plaintiff was in retaliation for Plaintiff's pursuit and exercise of Plaintiff's rights related to Plaintiff's role as an employee, which rights are of important public interest.

77.

Plaintiff realleges his economic, non-economic, punitive damages and attorneys' fees and costs as set forth in the paragraphs above.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For permanent injunctive relief enjoining Defendant, its officers, employees and

        agents from engaging in any disability or injured worker discrimination or retaliation.

2. Economic damages and future losses to be determined at trial;

3. Non-economic damages to be determined at trial;

4. Liquidated damages in an amount equal to Plaintiff's lost wages and benefits to be determined at trial;

5. Punitive damages in an amount to be determined at trial;

6. Reasonable costs and attorneys' fees; and

7. For such other and further relief as the Court may deem just and equitable.

DATED this 22nd day of September, 2016.

                                  s/ Robert Meyer
                                  Robert K. Meyer, OSB #086470
                                  Of Attorneys for Plaintiff